IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

STEPHANIE CLAYTON CURRY, Special Administratrix
of the Estate of Joe W. Clayton, Deceased                                    PLAINTIFF

V.                              CASE NO. 5:16-CV-05155

SAM'S WEST, INC. D/B/A SAM'S CLUB;
WALMART STORES, INC. D/B/A SAM'S CLUB;
and SCHUMACHER ELECTRIC CORPORATION                                   DEFENDANTS

## MEMORANDUM OPINION AND ORDER

This case was originally filed in the Circuit Court of Benton County, Arkansas, on May 23, 2016. Plaintiff Stephanie Clayton Curry, Special Administratrix of the Estate of Joe W. Clayton, alleged in the lawsuit that her father, Joe W. Clayton, suffered a wrongful death on May 24, 2013, caused by a defective battery charger manufactured by Defendant Schumacher Electric Corporation ("Schumacher") and sold by Defendants Sam's West ("Sam's") and Walmart Stores, Inc. ("Walmart"). Defendants jointly removed the case to this Court on June 24, 2016. (Doc. 1).

Now pending before the Court are two motions: a Motion to Remand (Doc. 14) filed by Plaintiff, and a Motion to Dismiss (Doc. 4) filed by all Defendants collectively. Plaintiff's Motion to Remand was accompanied by a Brief in Support (Doc. 15). Defendants' Motion to Dismiss was also accompanied by a Brief in Support (Doc. 5), and Plaintiff filed a Response in Opposition (Doc. 16) and Brief in Support (Doc. 17). Although Defendants never filed a formal brief in opposition to the Motion to Remand, they filed a Reply (Doc. 28) to the Motion to Dismiss, and their Notice of Removal (Doc. 1) also contains a memorandum of law that explains their arguments in favor of finding that Sam's and

1

Walmart were fraudulently joined, and that the Court has proper subject-matter jurisdiction over the remaining Defendant.

On August 19, 2016, the Court conducted a hearing on both pending Motions and heard argument from counsel before taking the matter under advisement. The Court is now prepared to rule, and for the reasons explained in detail herein, the Motion to Remand (Doc. 14) is denied, the Motion to Dismiss (Doc. 4) is granted, and the case is dismissed.

## I. BACKGROUND

Plaintiff Curry was appointed Special Administratrix of the Estate of her father, Joe W. Clayton, by the Circuit Court of Benton County, Arkansas, on or about May 23, 2016. (Doc. 3, p. 2). Neither she nor the decedent hail from Arkansas. They are citizens of Texas. The Court understands that the state court's appointment of Plaintiff was done for the limited purpose of prosecuting the instant wrongful death action.

On June 24, 2016, Sam's, Walmart, and Schumacher collectively filed a Notice of Removal (Doc. 1) from state court, asserting that the Court should dismiss Defendants Sam's and Walmart because they were fraudulently joined. After they are dismissed, Defendants assert that the Court will then have federal subject matter jurisdiction over this dispute due to the presence of complete diversity of citizenship of the remaining parties, pursuant to 28 U.S.C. § 1332. *See id.* at p. 3. As stated previously, Plaintiff is a citizen of Texas. This is so because her father, the decedent, was a citizen of Texas. *See* 28 U.S.C. § 1332(c)(2) ("the legal representative of the estate of a decedent shall be deemed to be a citizen only of the same State as the decedent . . . ."). As for the three Defendants,

Sam's and Walmart are both citizens of Arkansas, while Schumacher is a citizen of Illinois.[1]

The reason why the Court lacks original jurisdiction over the case now, prior to deciding the fraudulent joinder issue, is due to a provision in the law at 28 U.S.C. § 1441(b)(2), which involves a further jurisdictional restriction on removal actions. This restriction is commonly known as the "forum defendant rule," and it provides that "[a] civil action otherwise removable solely on the basis of the jurisdiction under section 1332(a) of this title"—that is, on the basis of diversity jurisdiction—"may not be removed if any of the parties in interest properly joined and served as defendants is a citizen of the State in which such an action is brought." *Id.* In the case at bar, the forum defendant rule applies because two of the Defendants, Sam's and Walmart, are citizens of Arkansas, the forum in which the state court action was brought.

The Eighth Circuit has made clear that the violation of the forum defendant rule "is a jurisdictional defect and 'not a mere procedural irregularity capable of being waived.'" *Horton v. Conklin*, 431 F.3d 602, 604 (8th Cir. 2005) (quoting *Hurt v. Dow Chem. Co.*, 963 F.2d 1142, 1145 (8th Cir. 1992)). Defendants correctly state, however, that the Court may find an exception to the forum defendant rule if the forum Defendants, Sam's and Walmart, were fraudulently joined in the action, that is, "if the plaintiff's claim against the diversity destroying defendant[s] has 'no reasonable basis in fact and law.'" *Knudson v. Sys. Painters, Inc.*, 634 F.3d 968, 977 (8th Cir. 2011) (quoting *Filla v. Norfolk S. Ry. Co.*, 336 F.3d 806, 810 (8th Cir. 2003), and observing that "the *Filla* standard remains good law in this circuit," 634 F.3d at 977 n.7).

---

[1] The parties agree that the minimum amount in controversy of $75,000 has been satisfied for purposes of the diversity statute.

3

Plaintiff disagrees that she has fraudulently joined Sam's and Walmart. She maintains she has asserted valid claims against them under Arkansas law, and in her Motion to Remand, she asks that the case be returned to state court for further proceedings. Defendants respond that Texas law, rather than Arkansas law, applies to the claims in this case, and no reasonable basis exists under Texas law to find Sam's or Walmart liable for the torts alleged in the Complaint, all of which arise from the alleged wrongful death of Mr. Clayton. Defendants have also filed a Motion to Dismiss in which they state that all claims against Schumacher are time-barred under the Texas two-year statute of limitations for wrongful death actions. Plaintiff, on the other hand, believes her claims were timely filed under Arkansas law, which has a three-year statute of limitations for wrongful death actions. The Court will consider below the merits of both pending Motions.

## II. LEGAL STANDARDS

### A. Motion to Remand

First the Court must resolve the Motion to Remand. Plaintiff contends that, due to the application of the forum defendant rule, the Court lacks subject-matter jurisdiction over the case and must send it back to state court. Defendants believe that subject-matter jurisdiction is proper in this Court once the forum Defendants, Sam's and Walmart, are dismissed on the basis of fraudulent joinder. "While fraudulent joinder—the filing of a frivolous or otherwise illegitimate claim against a non-diverse defendant solely to prevent removal—is rather easily defined, it is much more difficulty [sic] applied." *Filla*, 336 F.3d at 809. In the past, district courts have employed varying standards to evaluate whether

4

valid claims exist against a defendant or defendants at the removal stage, including "something close to a dismissal standard." *Id.* at 810. However, the Eighth Circuit in *Filla v. Norfolk Southern Railway Company* clarified that the general "reasonableness" of the underlying state law claims is of "paramount consideration" when conducting a fraudulent joinder analysis:

> Where applicable state precedent precludes the existence of a cause of action against a defendant, joinder is fraudulent. "[I]t is well established that if it is clear under governing state law that the complaint does not state a cause of action against the non-diverse defendant, the joinder is fraudulent and federal jurisdiction of the case should be retained." *Iowa Public Service Co. v. Medicine Bow Coal Co.*, 556 F.2d 400, 406 (8th Cir. 1977) (emphasis added). However, if there is a "colorable" cause of action—that is, if the state law might impose liability on the resident defendant under the facts alleged—then there is no fraudulent joinder. *See Foslip Pharmaceuticals, Inc. v. Metabolife Intern., Inc.*, 92 F. Supp. 2d 891, 903 (N.D.Iowa 2000). As we recently stated in *Wiles* [*v. Capitol Indemnity Corp.*, 280 F.3d 868 (8th Cir. 2002], ". . . joinder is fraudulent when there exists no reasonable basis in fact and law supporting a claim against the resident defendants." 280 F.3d at 871. Conversely, if there is a reasonable basis in fact and law supporting the claim, the joinder is not fraudulent.

336 F.3d at 810 (footnote omitted).

The Court's job, therefore, is to "simply determine whether there is a reasonable basis for predicting that the state's law might impose liability against the defendant." *Id.* at 811. If there is any doubt involved in making that prediction, "the district court should resolve all facts and ambiguities in the current controlling substantive law in the plaintiff's favor," not make a final decision, and remand the case, "leav[ing] the question for the state courts to decide." *Id.* (internal quotations and citations omitted).

## B. Choice of Law

A crucial question in this case is which state's law applies to the substantive claims.[2] This threshold question must be decided in order to determine whether a reasonable basis exists for imposing liability on the Arkansas Defendants, who are alleged to have been fraudulently joined. There are a few options to choose from. Plaintiff argues in favor of applying Arkansas law to the substantive claims, since the alleged tortious acts committed by Defendants Sam's and Walmart—specifically, "the negligent failure to inspect a product sold in a Sam's Club store, as well as the failure to warn of a product defect"—occurred "at Wal-Mart corporate headquarters located in Bentonville, Arkansas." (Doc. 15, p. 5). Defendants contend that Texas law should apply, as Mr. Clayton resided in Texas at the time of his death, his heirs currently reside in Texas, Mr. Clayton bought the allegedly defective battery charger from a Sam's Club store in Texas, the battery charger allegedly malfunctioned at Mr. Clayton's home in Texas, and Mr. Clayton died in Texas. Yet a third option that none of the parties have considered is the possible application of Illinois law, since the allegedly defective battery charger was designed, manufactured, and marketed for sale in Illinois.

All parties agree that the district court must apply the choice-of-law rules of the forum state in which it sits. *See Lane v. Celadon*, 543 F.3d 1005, 1007 (8th Cir. 2008). In order to apply Arkansas' choice-of-law rules for products liability actions, the Court looks to the Arkansas Supreme Court case of *Ganey v. Kawasaki Motors Corporation*, 366 Ark. 238 (2006), which was cited to by the Eighth Circuit in *Lane v. Celadon* as a case that

---

[2] At the hearing, Plaintiff's counsel called the issue "outcome determinative" as to the viability of the entire lawsuit.

6

helpfully "cleared up some confusion as to what choice-of-law method applies in Arkansas." 543 F.3d at 1010.

In *Ganey*, the Arkansas Supreme Court explained that the first question to be addressed in the choice-of-law analysis is "whether the case had any significant contacts with Arkansas," by applying the familiar doctrine of *lex loci delicti*: "the law of the place where the wrong took place." *Id.* at 251. The inquiry does not end there, however, as "the choice-of-law analysis ha[s] evolved from a simple application of the doctrine of *lex loci delecti* into a consideration of both that doctrine and Leflar's five choice-influencing factors." *Id.* These "Leflar factors," as they are now commonly known, are now a part of the Arkansas legal canon due to the scholarship of Professor Robert A. Leflar of the University of Arkansas School of Law. *Id.* The Eighth Circuit has explained that the Arkansas Supreme Court decided to incorporate the Leflar factors in the traditional choice-of-law analysis "to soften the application of the doctrine of lex loci delecti." *Lane*, 543 F.3d at 1010. These five Leflar factors are: "(1) predictability of results, (2) maintenance of interstate and international order, (3) simplification of the judicial task, (4) advancement of the forum's governmental interests, and (5) application of the better rule of law." *Id.* (citing to *Wallis v. Mrs. Smith's Pie Co.*, 261 Ark. 622 (1977)).

Importantly, for purposes of discussing the issues in the instant case, the choice-of-law analysis outlined above must be addressed even when a dispute revolves around the question of whether one state's statute of limitations should be applied over another state's. The *Ganey* Court examined this very dispute and found "there is no merit to the [] claim that Arkansas law automatically applies to an issue involving the applicable statute

7

of limitations." 366 Ark. at 250. Instead, a district court must apply the two-part test outlined above, first by considering the *lex loci delecti* doctrine, and next by considering the Leflar factors.

### C. Motion to Dismiss

If the Court denies the Motion to Remand and dismisses the forum Defendants as fraudulently joined, the next task would be to rule on the Motion to Dismiss. At that point, it would be clear that the Court's federal subject-matter jurisdiction over the remaining parties was proper, as per the diversity statute at 28 U.S.C. § 1332. The Motion to Dismiss argues that the remaining Defendant under this scenario, Schumacher, should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) because all claims against it are time-barred under Texas law. In Texas, the statute of limitations for wrongful death actions is two years, *see* Tex. Prac. & Rem. Code § 16.003(b), and there is no dispute of fact that Plaintiff filed her state court complaint nearly three years after her father's death.

"When it 'appears from the face of the complaint itself that the limitation period has run,' a limitations defense may properly be asserted through a 12(b)(6) motion to dismiss." *Wycoff v. Menke*, 773 F.2d 983, 984–85 (8th Cir. 1985) (quoting *R.W. Murray Co. v. Shatterproof Glass Corp.*, 697 F.2d 818, 821 (8th Cir. 1983)). In ruling on such a motion, the Court must accept all of the Complaint's factual allegations as true, and construe them in the light most favorable to Plaintiff, drawing all reasonable inferences in her favor. *See Ashley Cnty., Ark. v. Pfizer, Inc.*, 552 F.3d 659, 665 (8th Cir. 2009). However, the Complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to

relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

## III. DISCUSSION

### A. Motion to Remand

As explained in Section II.B. *supra*, the Court's first obligation is to engage in a choice-of-law analysis in order to determine which state's laws apply substantively to the claims made in the Complaint. Once that determination is made, the Court will then be able to address the question of whether any colorable claims exist against the forum Defendants, Sam's and Walmart, under the applicable state laws. If no colorable claims exist, then it will follow that these Defendants were fraudulently joined and must be dismissed. The Court may then exert proper subject matter jurisdiction over the remaining parties due to the presence of complete diversity. If, on the other hand, there is any doubt as to whether there is a reasonable basis for Plaintiff to assert any claims against Sam's and Walmart, the case must be remanded to the Circuit Court of Baxter County so that court may decide the substantive legal issues.

The Court therefore begins its choice-of-law analysis under Arkansas law by applying the doctrine of *lex loci delecti* to "decide which state has the most significant relationship to the parties and the issues." *Lane*, 543 F.3d at 1010. An examination of the Complaint reveals that at the time of Mr. Clayton's death, he was residing in Texas. On that particular day, he "was working on his 1980 International Harvester 274 (Serial Number 2130007J008269) tractor at 2030 Old Henderson Highway, Tyler, Texas" and was "repairing it from underneath" while the tractor was "in gear; but the engine was not

9

running." (Doc. 3, p. 3). "A large Schumacher battery charger was found on the right side of the tractor . . . . connected to the wall, and it appeared that it had been connected to the tractor's battery before the incident." *Id.* at p. 4. Then, allegedly due to "unreasonably dangerous over-voltage and/or over-current charging conditions" attributable to the faulty design and manufacture of the Shumacher battery charger, *id.* at p. 6, a "sudden, spontaneous, and unintended movement of the tractor" caused Mr. Clayton to become pinned underneath the left rear wheel of the tractor, where he died, *id.* at pp. 1-2.

The Complaint asserts that Mr. Clayton bought the allegedly defective battery charger in question at a Sam's Club store in Texas. He operated the battery charger in his workshop in Texas, and there it allegedly malfunctioned and caused his death. Further, at all times relevant to the facts of this case, Mr. Clayton, his wife, and his daughter, the appointed Administratrix of his estate, resided in Texas. The Complaint also states that Defendant Schumacher designed, manufactured, distributed, and sold the allegedly defective battery charger in the state of Illinois, which is the company's principal place of business. Finally, the Complaint alleges that certain "policies and decisions" concerning the retailing of the Schumacher battery charger were made from Sam's/Walmart's corporate headquarters in Bentonville, Arkansas, which resulted in the following wrongful acts: (1) "the negligent failure to inspect a product sold in a Sam's Club store," and (2) "the failure to warn of a product defect." (Doc. 15, p. 5).

Plaintiff concedes that she can only point to these "two specific 'wrongs'" set forth above as having taken place in Arkansas, while "the remaining tortious acts occurred in Illinois where Schumacher is located." *Id.* Nonetheless, Plaintiff's attorneys during the motion hearing argued that because all of the causes of action asserted against the

10

Arkansas Defendants took place Arkansas, this fact, in and of itself, provides a sufficient basis to find that Arkansas has the most significant relationship to the parties and the issues. Plaintiff's attorneys also speculated that perhaps Arkansas might have other ties to the case that are, as yet, unknown (and not pleaded in the Complaint), but that can only be ascertained through discovery. Counsel explained that since these issues were not capable of final decision at this point and required further discovery, the Court must remand the case to state court and allow for discovery to take place in that forum. In the alternative, it was noted that perhaps limited jurisdictional discovery on these issues would be appropriate prior to this Court deciding the matter.

In reviewing the facts asserted in the Complaint, it is obvious that either Texas or Illinois is the state with the most significant relationship to the parties and claims. The issue is not, as Plaintiff's counsel suggested at the hearing, whether Arkansas is the state where all the torts asserted against the forum Defendants were allegedly committed. Rather, the choice-of-law analysis turns on which of the three states in question has the most significant ties to the parties and the issues, when viewing the case as a whole. The Complaint drafted by Plaintiff's counsel asserts three causes of action against all Defendants, collectively, for strict product liability, negligence, breach of the implied warranty of fitness, and breach of the implied warranty of merchantability. Plaintiff's Complaint does not readily distinguish the alleged tortious acts that each individual Defendant allegedly committed. Instead, the Complaint implausibly suggests that all Defendants, collectively, "had a duty to exercise reasonable care in the design, manufacture, marketing, testing, approval, application for approval, inspection, sale and distribution of the Schumacher Battery Charger into the stream of commerce" (Doc. 3, p.

11

7), and then states in a conclusory fashion that Sam's and Walmart either "knew or should have known" of the alleged defects in the Schumacher Battery Charger, *id.* at p. 3, and thus should be held liable for certain torts that flow from that alleged knowledge.

The Eighth Circuit has observed that "[t]he fraudulent joinder doctrine anticipates resolution of jurisdictional issues at an early stage after removal so that the case can be properly remanded to state court if there is no jurisdiction." *Block v. Toyota Motor Corp.*, 665 F.3d 944, 951 (8th Cir. 2011). With that guiding principle in mind, the Court finds that in this case, as in the likely majority of cases, it would not be necessary to allow the parties to engage in discovery prior to deciding whether the forum Defendants were fraudulently joined, particularly since the Complaint provides a sufficient basis for the Court to make this early-stage decision. According to the Complaint, the parties' briefing, and their oral arguments during the hearing, the only connection between Arkansas and the facts of this case is that Arkansas happens to house the principal place of business of the product's retailer.

Plaintiff's counsel confirmed at the hearing that, to his knowledge, all "occurrence facts"—that is, the facts concerning Mr. Clayton's purchase of the battery charger, use of the product, alleged malfunctioning of the product, and his accidental death—occurred in Texas; while all the "design and manufacture facts"—including the planning and execution of the product's design, manufacture, product labeling, marketing, and testing—arose in Illinois. The Court is disinclined to place much stock in the speculation that, if early-stage jurisdictional discovery were ordered, the parties might possibly uncover further links between Arkansas and Mr. Clayton's death. At this stage in the proceedings, the Court is capable of making a decision based on the pleadings alone, and the doctrine of *lex loci*

12

*delecti* points to either Texas or Illinois, and not Arkansas, as having the most significant connection with the parties and claims. The Court will now move to the second step of the choice-of-law analysis and examine each Leflar factor to be certain that this initial decision is correct, and other important policy considerations have not been inadvertently ignored.

Beginning with the first Leflar factor, which considers which state's law will best ensure the predictability of results, it is important to remember that "'the decision in litigation on a given set of facts should be the same regardless of where the litigation occurs, so that forum-shopping will benefit neither party.'" *Lane*, 543 F.3d at 1010-11 (quoting *Gomez v. ITT Educ. Servs., Inc.*, 348 Ark. 69, 78 (2002) (in turn quoting Robert A. Leflar, American Conflicts Law § 103 at 205 (3d ed.1977))). Here, the predictability of results would favor applying either Texas or Illinois law, and not Arkansas law. Considering that Mr. Clayton's purchase and use of the product, as well as his death, all occurred in Texas, and the battery charger's design, manufacture, and marketing occurred in Illinois, it stands to reason that a lawsuit brought in either of those states would be a predictable outcome.

Unfortunately, it appears that both the Texas and Illinois wrongful death statutes contain the identical limitations period of two years, and Plaintiff filed her lawsuit about a year too late under those statutes. *See* Tex. Prac. & Rem. Code § 16.003(b) ("A person must bring suit not later than two years after the day the cause of action accrues in an action for injury resulting in death. The cause of action accrues on the death of the injured person."); 740 Ill. Comp. Stat. Ann. 180/2 ("Every such action shall be commenced within 2 years after the death of such person . . . ."). It is therefore no coincidence that Plaintiff filed suit in an "unpredictable" place, Arkansas, which happens to have a three-year

13

limitations period. *See* Ark. Code Ann. § 16-62-102(c)(1) ("Every action authorized by this section shall be commenced within three (3) years after the death of the person alleged to have been wrongfully killed . . . ."). To discourage forum shopping and reinforce the predictability of results, it follows that the first Leflar factor weighs in favor of applying either Texas or Illinois law.

As for the second Leflar factor, the Eighth Circuit's guidance is as follows: "When the forum state has little or no contact with a case and nearly all of the significant contacts are with another state, the second factor, maintenance of interstate and international order, suggests that the forum should not apply its own law to the dispute." *Lane*, 543 F.3d at 1011. Here, nearly all of the significant contacts in this case are with Texas and Illinois. For this reason, this second factor favors the application of Texas or Illinois law over the law of the forum state, Arkansas.

Moving on to the third Leflar factor, this one asks which state's law encourages the "simplification of the judicial task." After careful consideration, the Court finds that this factor is likely neutral, as it would be equally "simple" for the Court to apply Texas or Illinois law to the facts of this case as to apply Arkansas law.

The fourth factor, which concerns the advancement of the forum's governmental interests, certainly favors the application of either Texas or Illinois law over Arkansas law. Arkansas has such a comparatively limited connection to the parties, facts, and allegations of wrongdoing in this case that applying its statute of limitations, rather than that of Texas or Illinois, would do little to further Arkansas' governmental interests.

The fifth and final Leflar factor asks the Court to weigh which state's law offers "the better rule of law." Plaintiff argues that Arkansas law provides the better rule simply

14

because "Texas law precludes recovery while Arkansas law allows recovery." (Doc. 15, p. 6). For guidance on these issues, the Court turns to *Gomez v. ITT Educational Services, Inc.*, where the Arkansas Supreme Court was faced with essentially the same decision as is present here: whether or not to approve a choice-of-law analysis that resulted in the application of Texas law, with its shorter statute of limitations period, instead of Arkansas law, with its longer limitations period. 348 Ark. at 79. The *Gomez* Court disagreed that Arkansas had the "better rule of law" simply because the plaintiff's wrongful-death lawsuit was not time-barred in Arkansas. *Id.* The Court explained that "[n]either [Texas nor Arkansas] offers a 'better' remedy than the other, as they both provide the same redress from the same wrong; the only difference is in the time period in which such a cause of action must be brought." *Id.* The Court then concluded that "Arkansas simply does not have a sufficient relationship to the parties or to the injury that would cause this final consideration to be the controlling factor." *Id.* Similarly, this Court concludes that Arkansas law does not offer a better rule than Texas and Illinois, simply because Arkansas' limitations period is longer. Accordingly, the fifth factor is neutral and will not be given consideration in the final analysis.

Now that the Court has applied the five Leflar factors, it is clear that they weigh more heavily in favor of applying Texas or Illinois law, rather than Arkansas law. The fraudulent joinder issue is therefore easily decided. Under either Texas or Illinois law, the instant lawsuit was filed outside the statute of limitations, and thus, no claims arising from the wrongful death of Mr. Clayton are viable as against the forum Defendants. Accordingly, there is no "reasonable basis" for predicting that either Texas or Illinois law might impose

liability against Sam's and Walmart. *See Filla*, 336 F.3d at 810.³ The dismissal of these Defendants will be without prejudice for lack of subject-matter jurisdiction under Rule 12(b)(1). *See Wivell v. Wells Fargo Bank*, 773 F.3d 887, 896 (8th Cir. 2014)

### B. Motion to Dismiss

Now that the Court has dismissed the forum Defendants, there is complete diversity of citizenship between the remaining parties, Plaintiff and Schumacher, pursuant to 28 U.S.C. § 1332, and the Court hereby exercises its federal subject-matter jurisdiction over the claims remaining against Schumacher.

After due consideration, the Court finds that these claims must be dismissed pursuant to Rule 12(b)(6) because they all proceed from Mr. Clayton's alleged wrongful death. As previously explained, this case was not filed within the two-year statute of limitations period applicable under either Texas or Illinois law, so the claims are time-barred and should be dismissed with prejudice on that basis. *See Johnson v. Mott*, 376 Fed. App'x. 641, 641-42 (8th Cir. May 18, 2010) (unpublished, per curiam) (affirming dismissal with prejudice under Rule 12(b)(6) due to the action being barred by the statute of limitations).

### IV. CONCLUSION

---

³ Defendants suggest an alternate basis for dismissing the claims against Sam's and Walmart, namely that under Texas law, "[a] seller that did not manufacture a product is not liable for harm caused to the claimant by that product." Tex. Civ. Prac. & Rem. Code § 82.003. There are, however, certain exceptions to this "innocent seller" doctrine, and determining whether any of these exceptions might reasonably apply to the facts of this case would entail the Court engaging in a level of speculation as to the claimed facts that it is unwilling to do. Accordingly, because the Court finds a clear basis for dismissal of Sam's and Walmart in the expired statute of limitations periods under both Texas and Illinois law, the Court will refrain from ruling on Defendants' alternative basis for dismissal.

For the reasons stated herein, **IT IS ORDERED** that Plaintiff Stephanie Clayton Curry's Motion to Remand (Doc. 14) is **DENIED**.

**IT IS FURTHER ORDERED** that Defendants Sam's West and Walmart Stores, Inc. are **DISMISSED WITHOUT PREJUDICE** under Rule 12(b)(1) for lack of subject-matter jurisdiction, due to the Court's finding that they were fraudulently joined.

**IT IS FURTHER ORDERED** that the Motion to Dismiss (Doc. 4) is **GRANTED**, and Defendant Schumacher Electric Corporation is **DISMISSED WITH PREJUDICE** under Rule 12(b)(6), due to the expiration of the statute of limitations.

Judgment as to Schumacher will enter by separate Order.

**IT IS SO ORDERED** on this 23rd day of August, 2016.

_____
TIMOTHY L. BROOKS
UNITED STATES DISTRICT JUDGE

17